# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT E. MORLEY, JR., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 4:14-CV-00172 CDP |
| | ) | |
| SQUARE, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF RULE 12(b)(6) MOTION TO DISMISS COUNTS 1, 2, 3, 5, 6, 7 & 11 AS TIME BARRED UNDER MISSOURI'S BORROWING STATUTE

Dated:  May 15, 2014

Edward L. Dowd, Jr., #28785
Jennifer Kingston, #93569
Dowd Bennett LLP
7733 Forsyth Blvd., Suite 1900
St. Louis, Missouri 63105
Telephone: (314) 889-7300
Facsimile: (314) 863-2111

Josh A. Krevitt (*pro hac vice*)
Orin Snyder (*pro hac vice*)
Gibson, Dunn & Crutcher
200 Park Avenue
New York, New York 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

*Attorneys for Defendants*

# TABLE OF CONTENTS

Introduction ........................................................................................................... 1

Argument .............................................................................................................. 3

    **I.**    **MORLEY'S CLAIMS ARE TIME-BARRED UNDER MISSOURI'S BORROWING STATUTE** ............................................................. 3

        **A.**   **The Fact of Damage for Morley's Seven Claims Was First Capable of Ascertainment Where the Act of Purported Breach Occurred.** ...................... 3

        **B.**   **Morley's Effort to Change the Event Where His Claims Originated Is Procedurally Improper and Relies on Inapplicable Case Law.** ...................... 6

        **C.**   **Morley's Cases Involving Pure Economic Injury Do Not Change the Fact that His Claims Originated in Delaware.** ................................. 10

        **D.**   **Morley's Theft Cases Do Not Alter the Conclusion that His Joint-Venture-Based Claims Originated in Delaware.** ............................... 11

    **II.**   **MORLEY'S CONTINUING WRONG ARGUMENT IS FRIVOLOUS** ............. 12

    **III.**  **WHERE A CLAIM "ORIGINATES" UNDER THE BORROWING STATUTE DOES NOT CHANGE BASED ON WHY THE PLAINTIFF CHOSE MISSOURI AS HIS FORUM** ............................................... 14

Conclusion .......................................................................................................... 15

## TABLE OF AUTHORITIES

**Cases**

*BJC Health Sys. v. Columbia Cas. Co.*,
   348 F.3d 685 (8th Cir. 2003) ................................................................ 7

*Building Erection Servs., Inc. v. JLG, Inc.*,
   376 F.3d 800 (8th Cir. 2004) ................................................................ 7

*Combs v. Int'l Ins. Co.*,
   354 F.3d 568 (6th Cir. 2004) ............................................................ 4, 5

*D'Arcy & Assocs., Inc. v. K.P.M.G. Peat Marwick, L.L.P.*,
   129 S.W.3d 25 (Mo. Ct. App. 2004) .................................................. 13

*Davis v. Laclede Gas Co.*,
   603 S.W.2d 554 (Mo. banc 1980) ...................................................... 13

*Dorris v. McClanahan*,
   725 S.W. 2d 870 (Mo. banc 1987) ....................................................... 8

*Elmore v. Owens–Illinois, Inc.*,
   673 S.W.2d 434 (Mo. banc 1984) ........................................................ 8

*Ferrellgas, Inc. v. Edward A. Smith, P.C.*,
   190 S.W.3d 615 (Mo. Ct. App. 2006) ............................................... 1, 9

*Finnegan v. Squire Publishers, Inc.*,
   765 S.W. 2d 703 (Mo. Ct. App. 1989) ................................................. 5

*Gabelli v. S.E.C.*,
   133 S. Ct. 1216 (2013) ........................................................................ 3

*Great Plains Trust Co. v. Union Pac. R. Co.*,
   492 F.3d 986 (8th Cir. 2007) .................................................... 5, 6, 10

*Hailey v. Yellow Freight Sys., Inc.*,
   599 F. Supp. 1332 (W.D. Mo. 1984) ................................................ 6, 9

*Harco Nat. Ins. Co. v. Grant Thornton LLP*,
   698 S.E. 2d 719 (N.C. Ct. App. 2010) .......................................... 11, 12

*Harris-Laboy v. Blessing Hosp., Inc.*,
   972 S.W. 2d 522 (Mo. Ct. App. 1998) ................................................. 5

*Hasemeier v. Metro Sales, Inc.*,
   699 S.W.2d 439 (Mo. Ct. App. 1985) ................................................ 13

*Inauen Packaging Equip. Corp. v. Integrated Indus. Servs., Inc.*,
    970 S.W.2d 360 (Mo. Ct. App. 1998)................................................................... 10

*Kansas City Star Co. v. Gunn*,
    627 S.W.2d 332 (Mo. Ct. App. 1982)..................................................................... 8

*L.L. Nelson Enters., Inc. v. Cnty. of St. Louis, Mo.*,
    673 F.3d 799 (8th Cir. 2012) .................................................................................. 7

*Lato v. Concord Homes, Inc.*,
    659 S.W.2d 593 (Mo. Ct. App. 1983)................................................................... 13

*M & D Enters., Inc. v. Wolff*,
    923 S.W.2d 389 (Mo. Ct. App. 1996)..................................................................... 4

*McCann v. Foster Wheeler LLC*,
    225 P.3d 516 (Cal. 2010) ...................................................................................... 15

*Merrick Bank Corp. v. Savvis, Inc.*,
    No. CIV 09-1088-PHX-CKJ, 2010 WL 148201 (D. Ariz. Jan. 11, 2010) ........................... 2, 14

*Myers v. Life Ins. Co. of N. Am.*,
    2005 WL 3555833  (E.D. Mo. Dec. 28, 2005) .......................................................... 4

*Navarro v. Am. Nat. Skyline Inc. of Missouri*,
    2013 WL 1342999 (E.D. Mo. Apr. 3, 2013).............................................................. 7

*Nettles v. AT&T*,
    55 F.3d 1358 (8th Cir. 1995) .................................................................................. 9

*Oberly v. Kirby*,
    592 A.2d 445 (Del. 1991) ..................................................................................... 10

*Patch v. Playboy Enters., Inc.*,
    652 F.2d 754 (8th Cir. 1981) ................................................................................. 15

*Pollis v. New Sch. for Soc. Research*,
    132 F.3d 115 (2d Cir. 1997)................................................................................... 3

*Rajala v. Donnelly Meiners Jordan Kline, P.C.*,
    193 F.3d 925 (8th Cir. 1999) .................................................................................. 7

*Renfroe v. Eli Lilly & Co.*,
    686 F.2d 642 (8th Cir. 1982) .................................................................................. 8

*Spitzer v. Shanley Corp.*,
    151 F.R.D. 264 (S.D.N.Y. 1993) ............................................................................ 11

*Synergetics USA, Inc. v. Alcon Labs., Inc.*
    2009 WL 2016872 (S.D.N.Y. July 9, 2009) .................................................................... 11, 12

*Thompson by Thompson v. Crawford,*
    833 S.W.2d 868 (Mo. banc 1992) ............................................................................. 8

*Trzecki v. Gruenewald,*
    532 S.W.2d 209 (Mo. banc 1976) ............................................................................. 8

*United States ex. rel. Joshi v. St. Luke's Hosp., Inc.,*
    441 F.3d 552 (8th Cir. 2006) .................................................................................... 7

*United States v. Mann,*
    701 F.3d 274 (8th Cir. 2012) .................................................................................. 14

**Statutes**

    Mo. Rev. St. § 516.120(5) ......................................................................................... 9

**Introduction**

Robert Morley's own Complaint answers the core question under Missouri's borrowing statute of when and where his claims originated.  The Complaint alleges that Defendants "betrayed the joint venture *by incorporating Square, Inc.*, dictating the ownership of the newly incorporated company, and cutting Dr. Morley completely out of the enterprise."  Compl. at 1–2 (emphasis added).  Square's incorporation—in Delaware on June 17, 2009—was the event that first made Morley's asserted injury ascertainable because the Complaint alleges that Morley had a right to "an equal voice" with "an equal right of control in the direction of the enterprise," *id.* ¶ 50, and that Defendants denied him those rights for the first time when they incorporated the new company without him, *id.* ¶ 55.  Delaware's three-year limitation period accordingly bars the claims at issue on this motion.

Trying to distance himself from this clear language in his Complaint, Morley offers a scattershot response.  First, he submits a new declaration in an attempt to change his allegations, now stating that his claims originated on June 24, 2009 in Missouri, where he says he learned that Square had been incorporated (seven days earlier) without his involvement.  But even if a declaration could save a Complaint under Rule 12(b)(6)—and it cannot—Missouri uses a "where plaintiff learned of the claim" test only for claims alleging fraud.  Defendants excluded Morley's two fraud claims from this Motion for exactly that reason.  For the claims at issue here, the test is not where the plaintiff actually first ascertained the fact of damage, but rather, as an objective matter, "where the fact of damage became '*capable* of ascertainment.'"  *Ferrellgas, Inc. v. Edward A. Smith, P.C.*, 190 S.W.3d 615, 621 (Mo. Ct. App. 2006) (emphasis in original).

As Square's opening brief established (Doc. #31 ["Mot."] at 12–14), a contract or fiduciary duty breach that creates alleged injury is first "capable of ascertainment" where the

breaching event occurs.  Morley responds with cases inapplicable to claims such as those here: where an alleged act of breach coincides with, and makes ascertainable, the fact of injury.  Under the applicable test, Morley's claims originated in Delaware on the day Square was incorporated.

Second, Morley attempts to evade the applicable legal test by recasting his claims.  His Complaint, however, expressly forecloses the argument that his claims are for purely economic loss or that they originated with a theft of Missouri property.  The Complaint alleges that Defendants denied him "an equal voice" in the business, with the injuries centered on the governance and control of Square.  Square's incorporation—the cornerstone of those allegations—is the primary fact of damage underlying Morley's claims and asserted injuries.

Third, Morley contends that the Court need not apply Missouri's borrowing statute.  But no case stands for the outlandish proposition that his claims will always be timely so long as "business decision[s]" continue to "get[] made at Square."  Resp. at 12.  Equally untenable is the notion that the borrowing statute only applies if there is "credible evidence of forum shopping." *Id*.  In fact, the very case that Morley cites for this proposition, *Merrick Bank Corp. v. Savvis, Inc.*, 2010 WL 148201, at *6 (D. Ariz. Jan. 11, 2010), contradicts it.

Morley's claims are precisely the type that limitation periods are designed to bar.  He says his joint-venture-breach claim has been viable since June 24, 2009.  He has been litigating with Square since 2010.  After filing counterclaims against two of the Defendants, he argued that he would be substantially prejudiced by witness memory loss if depositions did not promptly commence.  *See Square, Inc. v. REM Holdings 3, LLC*, No. 4:10-CV-02243-SNLJ, Doc. #103 at 12–13.  Yet Morley waited until 2014—when his patent claims were all but dead and Square was rumored to be worth billions—to claim for the first time that a 2009 oral agreement had made him a one-third partner in the venture that became Square.  Limitations periods prevent plaintiffs

2

like Morley from raising claims that have been lying in "slumber until evidence has been lost, memories have faded, and witnesses have disappeared." *Gabelli v. S.E.C.*, 133 S. Ct. 1216, 1221 (2013) (internal quotations and citations omitted).  These laws "require[] that . . . claims be brought promptly to protect the defendant against . . . fabricated claims." *Pollis v. New Sch. for Soc. Research*, 132 F.3d 115, 119 (2d Cir. 1997).  The Court should enforce Missouri's borrowing statute by dismissing the seven claims at issue.

**Argument**

## I.  MORLEY'S CLAIMS ARE TIME-BARRED UNDER MISSOURI'S BORROWING STATUTE

Morley's claims originated, if at all, in Delaware on June 17, 2009, where and when Defendants incorporated Square without giving Morley a voice in that decision.  Morley's three arguments for why they instead originated in Missouri are wrong.  First, he submits a declaration that goes outside of his Complaint to allege that he was physically in Missouri when he learned Square had been incorporated in Delaware.  Resp. at 6.  This submission, impermissible under Rule 12(b)(6), is unavailing because the test is not where Morley was when he learned of the breach.  Second, Morley contends (*id.* at 4–5) that his claims originated where he allegedly "suffered purely economic injury" and, third, he contends (*id.* at 5) that the test is where joint-venture assets were located before their alleged theft.  Neither argument has merit, given the express allegations of the Complaint.  Each of the seven claims at issue was first capable of ascertainment in Delaware on June 17, 2009, and they must therefore be dismissed as untimely.

### A.  The Fact of Damage for Morley's Seven Claims Was First Capable of Ascertainment Where the Act of Purported Breach Occurred.

Square demonstrated in its opening brief (*id.* at 12–15) that the claims at issue in this motion originated at the time and place of the purported breach of a joint venture agreement.  Morley expressly alleged he was injured when Defendants "incorporated a new company (which

3

became Square, Inc.)" without giving him "an equal voice" in that decision, including "an equal right of control in the direction of the enterprise."  Compl. ¶¶ 50, 55.  The clock began running that day because "[t]he test is when the plaintiff could have first successfully maintained the action."  *M & D Enters., Inc. v. Wolff*, 923 S.W.2d 389, 394 (Mo. Ct. App. 1996).

    In a case such as this—where the alleged breach is an affirmative act, and where the breaching act and alleged injury coincide—the borrowing statute looks to where that act occurred.  *See* Mot. at 13−14 (citing, *e.g.*, *Myers v. Life Ins. Co. of N. Am.*, 2005 WL 3555833, at *3 (E.D. Mo. Dec. 28, 2005) ("[Plaintiff's] claims are primarily directed towards acts committed by [defendant] from its principal place of business in Illinois."); and *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 584 (6th Cir. 2004) ("Plaintiff suffered an injury the moment Defendant drafted its response to Plaintiff's coverage inquiry, as opposed to when Plaintiff actually learned what Defendant would do.")).

    Morley's *only* argument for ignoring *Myers* is that "forum-shopping" by the plaintiff in that case "obviously weighed heavily in the Court's analysis."  Resp. at 9.  That is incorrect.  The court in *Myers* stated that its "tasks [were] to 1) determine when the cause of action originated; and 2) where the cause of action originated."  *Myers*, 2005 WL 3555833, at *2.  It did so by expressly applying the borrowing statute to the complaint.  *Id.* at *2−3.  "After careful consideration of the matter," the court held that, the claims arose outside Missouri where the defendant committed the alleged wrongful acts.  *Id.* at *3.  The court did note that the plaintiff originally filed her case in Illinois, not as proof of forum-shopping, but rather to note that even she "must have recognized" that the borrowing statute compelled the result.  *Id.*  The Court in no way suggested that forum-shopping concerns dictated either the legal standard or the result.

    Square also relied in its opening brief on *Combs*, which offers the most comprehensive

4

analysis in any reported case of how borrowing statutes apply to cases that, like this one, involve affirmative acts that allegedly caused and coincided with damage.  Canvassing case law from Missouri and several other jurisdictions, *Combs* reached a two-part conclusion about the Missouri borrowing statute that is fatal to Morley's claims:  (1) If the defendant's affirmative act is a breach of contract, the plaintiff suffered injury at the moment the defendant took that action, and (2) "the injury occurred" in the state where the defendant committed the relevant act because that is where injury could first be ascertained.  354 F.3d at 584 & n.7.

In questioning the persuasive force of *Combs*, Morley falsely states that the Sixth Circuit based its conclusion about the origination of claims on a single Missouri libel case.  Resp. at  8–9 (citing *Finnegan v. Squire Publishers*, *Inc.*, 765 S.W. 2d 703 (Mo. Ct. App. 1989)).  To the contrary, the court "[v]iewed overall" the "Missouri jurisprudence" on this subject by considering seven different cases.  354 F.3d at 583-84.  And in setting forth the interpretation of Missouri law that is fatal to Morley's argument, *id.*, it did not rely on *Finnegan*, but rather on *Harris-Laboy v. Blessing Hosp., Inc.*, 972 S.W. 2d 522, 524 (Mo. Ct. App. 1998) ("Damage is sustained and capable of ascertainment when it *can be* discovered or made known, not when the plaintiff actually discovers the injury or wrongful conduct." (emphasis in original)).  *Id.*  Morley does not even cite, much less offer a reason to disregard, *Harris-Laboy*.

One of the cases Morley relies on (at 5, 8, 9), *Great Plains Trust Co. v. Union Pac. R. Co.*, 492 F.3d 986 (8th Cir. 2007), actually confirms that claims such as Morley's originate at the location of the alleged breach.  *Great Plains* looked to the state "where the economic loss [was] felt," Resp. at 8, only *after* determining that it was the same state where the breach—a failure to pay under the contract—occurred.  Citing the place-of-breach rule—*i.e.*, that "in a breach-of-contract suit, the cause of action accrues upon a defendant's failure to do the thing at the time

5

and in the manner contracted"—the court reasoned that "for failure-to-pay cases, the cause of action accrues where payment was to be made." *Great Plains*, 492 F.3d at 992 (internal quotations and citation omitted); *id.* at 993 (breach of contract claim "originated in Kansas" where "the interest payment was to be mailed"); *id.* at 992 ("In breach of contract actions the cause ordinarily 'originates' or 'accrues,' for purposes of a 'borrowing statute,' *where the breach occurs*, with that place being the place of performance." (quoting *Hailey v. Yellow Freight Sys., Inc.*, 599 F. Supp. 1332, 1336 (W.D. Mo. 1984) (emphasis added))).  Applying the reasoning in *Great Plains* here, Morley's claims originated in the state where Defendants' act of *commission* (Square's incorporation) allegedly breached an agreement, just as Great Plains' claim originated at the location of defendants' breach-by-omission (*i.e.*, where the relevant act *was supposed to* occur).  Morley's own allegations and his own cases thus supply the answer to when and where the claims at issue originated:  on June 17, 2009, in Delaware.

### B.    Morley's Effort to Change the Event Where His Claims Originated Is Procedurally Improper and Relies on Inapplicable Case Law.

Rather than defend the allegations in his Complaint, Morley makes new ones aimed at moving the relevant event from Delaware to Missouri.  He uses a declaration to allege for the first time that he was in Missouri when he learned Square had been incorporated.  Doc. #33-4, Morley Decl. ¶¶ 3–4 (declaring that McKelvey told him in person—in Missouri—that Dorsey had changed the form of their alleged oral joint venture a week earlier by "incorporat[ing] a company in Delaware" in an effort to "dictate equity ownership").  His argument is impermissible under Rule 12(b)(6) and rests on an inapplicable legal test.

Morley cannot use a declaration as a mid-briefing, *de facto* amendment of his Complaint. It is a sure sign of trouble for the plaintiff when *he* is the party who needs to be reminded that a "12(b)(6) motion will succeed or fail based upon the allegations contained in the face of the

complaint." *BJC Health Sys. v. Columbia Cas. Co.*, 348 F.3d 685, 687–88 (8th Cir. 2003) (internal quotation and citation omitted); *see also Navarro v. Am. Nat. Skyline Inc. of Missouri*, 2013 WL 1342999, at *2 (E.D. Mo. Apr. 3, 2013) ("[T]he Court is not at liberty to consider the arguments propounded based upon matters outside the pleadings."). Morley cannot simply walk away from those parts of his Complaint that have now proven detrimental to his case. *L.L. Nelson Enters., Inc. v. Cnty. of St. Louis, Mo.*, 673 F.3d 799, 806 (8th Cir. 2012) ("Allegations in a complaint are binding admissions[.]").[1]

Even had Morley's Complaint contained this new allegation (instead of alleging that Square's incorporation first made his injury capable of ascertainment), the claims at issue would remain time-barred. Several cases that Morley relies on confirm that the test for the claims at issue here is not "where the plaintiff learned of the injury," but, again, where it was first capable of ascertainment. *See, e.g.*, *Building Erection Servs., Inc. v. JLG, Inc.*, 376 F.3d 800, 805 (8th Cir. 2004) (stating that *Rajala v. Donnelly Meiners Jordan Kline, P.C.*, 193 F.3d 925, 928 (8th Cir. 1999) "rejected the very argument . . . advance[d] in this case": that "the injuries accrued in" the state where the defendant was advised of the facts that originated the cause of action).[2]

---

[1]   Morley does not move to amend his Complaint to add his new allegation. Nor should that be allowed. As shown below, any amendment he might muster after so many opportunities to assert claims against Defendants for the last four years would be futile. *United States ex. rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556–59 (8th Cir. 2006) (motion to amend should be denied on futility grounds if it would fail to bring the claims within the limitations period).

[2]   Morley incorrectly argues that *Rajala* stands for something different. He asserts that the Court there "rejected the argument that a cause of action originated where the defendant auditors furnished negligent advice." Resp. 7. But Morley confuses the "defendant auditors" in that case (Donnelly Meiners) with the new auditors (Ernst & Young), who disclosed to the plaintiff the facts underlying its claims. The argument the Eighth Circuit rejected is the one Morley makes here: that the claims originated in the state where the plaintiff learned the facts supporting its claims. 193 F.3d at 928 (rejecting plaintiff's argument that "the action originated" in the state

*(Cont'd on next page)*

The other cases Morley relies on to support his proposed legal test do not apply to the claims at issue.  In those cases, the wrongful acts preceded the acts or events that first made the fact of damage capable of ascertainment.  These include malpractice and toxic tort cases, where the plaintiff may not develop an ascertainable injury until years after the wrongful conduct.  *See, e.g.*, Resp. at 3 (citing *Renfroe v. Eli Lilly & Co.*, 686 F.2d 642, 646–47 (8th Cir. 1982) (stating "we do not accept the plaintiffs' argument that their causes of action originated where the defendants' allegedly tortious activity occurred and where they were last exposed to DES" because "the final element of the cause of action occurred, and their respective causes of action accrued" later, "[w]hen the cancer developed and became capable of ascertainment")).  Those cases simply apply the same "capable of ascertainment" test to a different fact pattern—one that contrasts with the allegations here of a wrongful act and fact of damage that are *simultaneously* capable of ascertainment.  *See, e.g., Elmore v. Owens–Illinois, Inc.,* 673 S.W.2d 434, 436 (Mo. banc 1984) (cause of action accrued years after the plaintiff's asbestos exposure, because it was first capable of being ascertained when and where his doctor diagnosed the illness).[3]

---

*(Cont'd from previous page)*

where Ernst & Young explained to plaintiff the "extent and specifics of the alleged wrongs" by the defendant auditors).  *Rajala* did not even address—much less reject—an "argument that a cause of action originated where the defendant auditors furnished negligent advice."  Resp. 7.

[3]    *Kansas City Star Co. v. Gunn*, 627 S.W.2d 332 (Mo. Ct. App. 1982), which Morley also cites, was wrongly decided.  That court did not examine any of the borrowing statute cases that apply the "capable of ascertainment" test.  Instead, it performed a traditional conflicts of law analysis, applying the Restatement on Conflicts of Laws.  *Id.* at 334–35.  That was error.  The Missouri Supreme Court has held that traditional conflicts of law analysis does not have "any application" when applying the borrowing statute.  *Trzecki v. Gruenewald*, 532 S.W.2d 209, 211 (Mo. banc 1976); *see also Dorris v. McClanahan*, 725 S.W. 2d 870, 872 (Mo. banc 1987), (borrowing statute "preempts an analysis" under the Restatement), *partially overruled on other grounds by Thompson by Thompson v. Crawford*, 833 S.W.2d 868, 872–73 (Mo. banc 1992).

In fact, one of the cases that Morley cites—*Ferrellgas*—explicitly clarifies that regardless of whether the fact of injury and the breaching act coincide in place and time, the test remains where and when the injury was first "*capable* of ascertainment."  190 S.W. 3d at 621 (emphasis in original).  In that legal malpractice case, the court looked *not* to where the Missouri plaintiff was when it "learned of" an unfavorable California verdict or where it might have felt a financial loss; instead it looked to the state where the verdict "[became] a matter of public record," holding that by becoming a "matter of public record," it was "immediately 'capable of ascertainment.'"  *Id.*  The same is true for Square's publicly filed articles of incorporation.

Only for fraud claims is the "capable of ascertainment" test replaced by a "where the plaintiff learned of his claim" test.  *See Nettles v. AT&T*, 55 F.3d 1358, 1364 (8th Cir. 1995) ("an action for relief on the ground of fraud, however, accrues—not when the resulting damage is capable of ascertainment—but when the facts constituting the fraud are discovered" (citations and internal quotations omitted)).  In *Hailey*, *see* Resp. at 4 n.2, the court ruled that "when—or where—plaintiff learned of defendant's failure to honor its alleged promise is irrelevant to an application of either § 516.100 [the general limitations statute governing the claims in this Motion] or [the borrowing statute]."  599 F. Supp. at 1336.  Thus, "notice or discovery is *not* an element of the statute's construction."  *Id.* (emphasis in original; referring to usual construction of § 516.100).  But *Hailey* "reach[ed] a different result with respect to plaintiff's fraud claim" because, for fraud claims alone, the claim accrues "where plaintiff discovered the fraud."  *Id.* at 1336–37 (emphasis omitted; citing, *inter alia*, MO. REV. ST. § 516.120(5) (claim does not accrue in fraud cases "until the discovery by the aggrieved party" of the facts constituting the fraud)).  This is why Defendants did not include Morley's two fraud claims in this Motion.  *See* Mot. at 15 n.9.  For the claims that *are* at issue, Morley's declaration is as irrelevant as it is improper.

**C.    Morley's Cases Involving Pure Economic Injury Do Not Change the Fact that His Claims Originated in Delaware.**

Morley's next tactic for avoiding Delaware's statute of limitations is to invite the Court to re-write his Complaint to allege claims of pure economic loss.  Unlike the cases Morley cites, *see, e.g., Great Plains*, 492 F.3d at 992–93 (economic injury from a missed payment), Morley's claims do not allege pure economic injury.  In alleging that the incorporation of Square without his involvement deprived him of an "equal voice" in the business with an "equal right of control in the direction of the enterprise," Compl. ¶¶ 50, 55, Morley invokes a free-standing right of decision-making and control that is a separate "essential element" under the joint-venture law that his Complaint cites.  *See Inauen Packaging Equip. Corp. v. Integrated Indus. Servs., Inc.*, 970 S.W.2d 360, 371 (Mo. Ct. App. 1998) ("Since the parties did not share control equally . . . they cannot be said to have been joint venturers[.]"); Compl. ¶ 81.  This alleged denial of an "equal voice" is the critical injury that originates Morley's claims—and it was first capable of ascertainment in Delaware, not Missouri.

It makes perfect sense that when a plaintiff alleges breach of an equal-partner/equal-voice joint venture, his best example of injury would be his exclusion from the decision whether to incorporate in the first place.  It is hard to imagine a more defining decision for a new business than the legal form it will take; "the choice of form results in very different legal consequences." *Oberly v. Kirby*, 592 A.2d 445, 467 (Del. 1991).  The point is not that a decision whether to incorporate is "*by itself* inconsistent with a joint venture."  Resp. at 6 (emphasis added).  Rather, Morley's own claim is that such a venture was breached when Defendants incorporated Square

10

without his voice in the decision.[4]

### D.    Morley's Theft Cases Do Not Alter the Conclusion that His Joint-Venture-Based Claims Originated in Delaware.

In Morley's final effort to shift the origination of his claims to Missouri, he argues that if stolen property crosses state lines, the claim originates in the state where the property was initially.  *See* Resp. at 5.  But Morley's argument is a non-starter because the cases he cites do not support that claimed rule.  None of the three opinions addresses stolen property that crossed state lines.  *See, e.g., Harco Nat. Ins. Co. v. Grant Thornton LLP*, 698 S.E. 2d 719, 721, 724–26 (N.C. Ct. App. 2010) (state agency seized an in-state bank account, and also applying a traditional conflicts-of-law test); *Spitzer v. Shanley Corp.*, 151 F.R.D. 264, 266 (S.D.N.Y. 1993) (complaint alleged a "conspiracy" to commit theft, with no substantive theft claim); *Synergetics USA, Inc. v. Alcon Labs., Inc.*  2009 WL 2016872, at *1–2 (S.D.N.Y. July 9, 2009) (no mention that former employee left the state after stealing product drawings).

Even if Morley had fairly described the law, it would not save *his* claims.  For all of Morley's repeated references to Missouri, he points to nothing in his Complaint alleging that any piece of Missouri property was "funneled" to another state.  *See* Resp. at 1–2.  Instead, he points to alleged Missouri-based "contributions," all of them intangible—"time, ingenuity, invention, technical expertise, business acumen, and knowledge."  Resp. at 5.  That contrasts with the

---

[4]    Morley also baldly asserts that Defendants' acts "caused Missouri financial injury," analogizing to a case where the alleged injury was a "cash-flow crunch."  Resp. at 5, 7.  But the Complaint contains no allegation that Morley experienced any cash-flow changes—much less a crunch—in June 2009.  There also is no allegation that Dorsey or McKelvey received or expected to receive *any* payments from this start-up business during any part of 2009, or that Dorsey's "intended" decision to "dictate equity ownership," Morley Decl. ¶ 3, had any cash flow effect before, or even after, June 17, 2009, when Morley's claims originated.

tangible objects in the cases that Morley cites—items whose theft would be ascertainable by looking in their original location.  *See, e.g.*, *Harco*, 698 S.E. 2d at 721 (seizure of money from bank account); *Synergetics*, 2009 WL 2016872, at * 1 (stolen product drawings).  Morley does not—and cannot—explain where in Missouri one could have looked during 2009 to see if a Delaware corporation operating in California had made off with his ingenuity or its fruits.[5]

Finally, even had the Complaint identified a theft and movement across state lines of property that had started in Missouri, Morley's own Complaint alleges that the first fact of damage was ascertainable with the incorporation of Square.  Compl. at 1.  Any additional alleged injury—including the supposed funneling of assets into Square—would have been subsequent to and a consequence of this alleged breach by incorporation.  *See also* Mot. at 10 (citing case law that the statute begins to run even if all possible damages are not "known, or even knowable").

## II.   MORLEY'S CONTINUING WRONG ARGUMENT IS FRIVOLOUS

Morley's fallback position is that the borrowing statute does not even apply because his claims will never expire as long as Defendants operate Square without him.  Resp. at 11.  Under this fanciful theory, every time someone leaves a business venture armed with a potential claim that his contractual right to remain was violated, he can sit on that claim for as long as the business is operating—effectively forever.  And the longer he waits, the more he is rewarded, because every business decision that was made in his absence is fair game for litigation.

In an effort to support this novel position—and thus avoid any statute-of-limitations

---

[5]    In the only count at issue that comes close to alleging theft—Morley's conversion claim in count 11—the only things he claims were stolen are also intangible:  "solutions" related to decoding signals, and the ideas that went into Square's patent applications.  (Morley's Response also mentions trade secret misappropriation, but Square's opening brief explains (at 15 n.9) why that claim is not governed by this Motion.)

defense—Morley again misstates the law.  His Response omits critical language from the principal case he cites—*Davis v. Laclede Gas Co.*, 603 S.W.2d 554, 556 (Mo. banc 1980). Morley relies on the reference in *Davis* to wrongs that "may be said to continue from day to day," Resp. at 11, but the immediately preceding sentence explains why the clock on his claims started with the single act of incorporating Square:  "if the wrong done is of such a character that it may be said that all of the damages, past and future, are capable of ascertainment in a single action so that the entire damage accrues *in the first instance*, the statute of limitation begins to run *from that time*."  603 S.W.2d at 556 (emphases added).  "The fact that the extent of damage may be dependent upon uncertain future events has never been held to preclude the filing of suit nor to delay the accrual of the plaintiff's cause of action for purposes of the Statute of Limitations."  *Lato v. Concord Homes, Inc.*, 659 S.W.2d 593, 595 (Mo. Ct. App. 1983). "Damage resulting from one wrong that continues and becomes more serious over time does not extend the time within which suit may be brought."  *D'Arcy & Assocs., Inc. v. K.P.M.G. Peat Marwick, L.L.P.*, 129 S.W.3d 25, 30 (Mo. Ct. App. 2004) ( internal quotation omitted).

The first sentence of the paragraph that Morley quotes from *Davis* also explains, with a flashing caution sign, that his vision of a never-ending limitations period for garden-variety contract breach claims is not the law:  "We have concluded that the following rule of law should be applied *in the peculiar and particular circumstances* of this case . . . ."  603 S.W.2d at 556 (emphasis in original).  The courts of this State have heeded that caution.  *See, e.g.*, *Lato*, 659 S.W.2d at 595 ("This case does not present the 'peculiar and particular circumstances' wherein 'the wrong may be said to continue from day to day, and to create a fresh injury from day to day . . . .'" (quoting *Davis,* 603 S.W.2d at 556)); *Hasemeier v. Metro Sales, Inc.*, 699 S.W.2d 439, 443 (Mo. Ct. App. 1985) (*Davis* "concerned fact situations which were unusual, or as the

supreme court emphasized . . . , 'peculiar and particular circumstances'"").   Morley offers no

basis for receiving special treatment in this case.

## III.   WHERE A CLAIM "ORIGINATES" UNDER THE BORROWING STATUTE DOES NOT CHANGE BASED ON WHY THE PLAINTIFF CHOSE MISSOURI AS HIS FORUM

Morley's final bid is an effort to write a new exception into the borrowing statute.  He

argues that the Court can ignore the statute's express command to apply the limitations period of

the state where each claim originated if the plaintiff does not appear to be forum shopping.

Resp. at 12.  While policy can guide judicial interpretation of statutory text, it is not a license to

rewrite the text.  *United States v. Mann*, 701 F.3d 274, 284 (8th Cir. 2012) ("When the words of

a statute are unambiguous, . . . judicial inquiry is complete." (internal quotations and citation

omitted)).

Morley falsely states that one court has interpreted the statute in the manner he urges.  He

claims that a district judge in Arizona "refus[ed] to apply Missouri's borrowing statute in the

absence of any credible evidence of forum shopping."  Resp. at 12 (citing *Merrick Bank*, 2010

WL 148201, at *5).  That judge did just the opposite.  There, the court denied a motion to

dismiss on statute of limitations grounds after venue had been transferred from this district to

Arizona.  The court did credit the plaintiff's assertions that it was not forum shopping when it

filed first in Missouri, *Id*. at *6, but the court did not ignore Missouri's borrowing statute.

Instead, in the *very next sentence* of the opinion, the court applied the Missouri borrowing statute

to conclude plaintiff's claims originated in Utah.  *Id.* (applying borrowing statute cases).

Nowhere did the court say that it could simply refuse to apply the borrowing statute on the

ground that plaintiff did not seem to be forum shopping.

In addition to misstating the law, Morley relies on a number of "significant contacts" to

Missouri, as if the issue were something that, in fact, is uncontested:  venue.  *See* Resp. at 12.

"Venue statutes and borrowing statutes . . . serve different policies."  *Patch v. Playboy Enters., Inc.*, 652 F.2d 754, 757 (8th Cir. 1981).  The borrowing statute "prevents a plaintiff from gaining more time to bring an action merely by suing in a forum other than where the cause of action accrued."  *Id.* at 756.  Morley is wrong to frame the issue as whether he should be forced to file suit in Delaware or California, which no one has argued.  The borrowing statute gave him three years to file suit in Missouri.  It furthers that law's policy to tell Morley he cannot wait nearly five years, invoke Missouri's longer limitations period, and thereby avoid the period that applies in the state where his claims originated.

Finally, Morley contends that applying the borrowing statute would "promote forum shopping, not prevent it," because had he filed in California the court would have applied Missouri's longer limitations period.  Resp. at 13.  Morley cites *McCann v. Foster Wheeler LLC*, 225 P.3d 516 (Cal. 2010), to argue that California would "apply the limitations law of whichever state has 'the most significant relationship' to the dispute."  Resp. at 13.  The Court need not resolve whether Missouri or California has the most significant relationship, because Morley leaves out the most important part of *McCann*.  California *also* has a borrowing statute, and the only reason it did not apply automatically in *McCann* is that the plaintiff there fell within an exception for California residents.  225 P.3d at 525–26.  Thus, had Morley filed his claims in California, Delaware's limitations periods would still have applied under the California borrowing statute.  *Id.* at 525 (noting comparable borrowing statute test of the state in which "the cause of action has arisen").  The same three-year period would have barred his claims.

## Conclusion

The claims in counts 1, 2, 3, 5, 6, 7, and 11 of the Complaint are time-barred pursuant to Missouri's borrowing statute and should be dismissed with prejudice.

Dated:  May 15, 2014

By: /s/ Jennifer Kingston
Edward L. Dowd, Jr., #28785
Jennifer Kingston, #49307MO
Dowd Bennett LLP
7733 Forsyth Blvd., Suite 1900
St. Louis, Missouri 63105
Telephone: (314) 889-7300
Facsimile: (314) 863-2111

Josh A. Krevitt (*pro hac vice*)
Orin Snyder (*pro hac vice*)
Gibson, Dunn & Crutcher
200 Park Avenue
New York, New York 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

*Attorneys for Defendants*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 15, 2014, the foregoing was served via the electronic filing

system of the U.S. District Court for the Eastern District of Missouri on all counsel of record.

/s/ Jennifer S. Kingston